IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SHARON JACK, in her capacity as
Sellers' Representative,

        Plaintiff,

        v.

JACK ACQUISITIONS, INC. and
HARRISON GYPSUM, LLC, doing
business as ACG Materials,

        Defendants.

Civil Action No. 19-0052-CFC

---

Richard Donaldson, MONTGOMERY MCCRACKEN WALKER & RHOADS
LLP, Wilmington, Delaware; Christina Vavala, POLSINELLI PC, Wilmington,
Delaware

    *Counsel for Plaintiff*

Robert Vrana, YOUNG, CONAWAY, STARGATT & TAYLOR LLP,
Wilmington, Delaware

    *Counsel for Defendants*

## **MEMORANDUM OPINION**

July 21, 2020
Wilmington, Delaware

_____
COLM F. CONNOLLY
UNITED STATES DISTRICT JUDGE

Plaintiff Sharon Jack, in her capacity as Sellers' Representative, has sued

Defendants Jack Acquisitions, Inc. and Harrison Gypsum, LLC (doing business as

ACG Materials) for breach of contract, unjust enrichment, and declaratory relief.

D.I. 1 at 7–10.  Plaintiff has also sued Jack Acquisitions for breach of the implied

covenant of good faith and fair dealing.  D.I. 1 at 9.  Before me is Defendants'

motion to dismiss Plaintiff's Complaint for failure to state a claim under Federal

Rule of Civil Procedure 12(b)(6).  D.I. 12.

## I.   BACKGROUND[1]

Gary Jack, Edward Liebich, Linda Liebich, and Sharon Jack (collectively,

Sellers) previously owned all outstanding capital stock of J.A. Jack & Sons, Inc., a

company that mines and distributes calcium carbonate (limestone).  D.I. 1 ¶ 6.  In

February 2015, Jack Acquisitions, an affiliate of Harrison Gypsum, acquired the

outstanding capital stock of J.A. Jack & Sons, Inc. pursuant to a Stock Purchase

Agreement (SPA).  D.I. 1 ¶ 7.

The SPA, which is an exhibit attached to the Complaint, requires Jack

_____

[1] When assessing the merits of a Rule 12(b)(6) motion to dismiss, I accept as true
all factual allegations in the Complaint and exhibits attached to the Complaint, and
view those facts in the light most favorable to the plaintiff.  *See Schmidt v. Skolas*,
770 F.3d 241, 249 (3d Cir. 2014); *Umland v. PLANCO Fin. Servs.*, 542 F.3d 59, 64
(3d Cir. 2008).

Acquisitions (called "Buyer" in the SPA and this Memorandum Opinion) to make payments to Sellers at certain times according to the terms of a promissory note. D.I. 1 ¶¶ 8–9. Plaintiff asserts that a payment on the promissory note became due on June 30, 2018. D.I. 1 ¶ 11.

Prior to that date, on January 4, 2018, Buyer had issued to Sellers a "notice of setoff" stating that Buyer would setoff amounts due under the promissory note to compensate Buyer for Plaintiff's alleged breach of Section 3.12 of the SPA and to allow Sellers to satisfy their alleged "indemnification obligations" under Section 9.2 of the SPA. D.I. 1 ¶ 12.

Section 3.12 of the SPA contains "Environmental, Health and Safety" representations and warranties that Sellers made to Buyer. D.I. 1 ¶ 13. Section 9.2(c) of the SPA requires Sellers to "indemnify, defend and hold harmless the Buyer Indemnitees from and against any and all Adverse Consequences that any Buyer Indemnitee may suffer or incur resulting from, arising out of, relating to, in the nature of, or caused by any Designated Pre-Closing Liabilities." D.I. 1, Ex. A § 9.2(c). Finally, Section 9.2(d) of the SPA requires Sellers to reimburse Buyer for costs associated with air emissions permits required by the Puget Sound Clean Air Agency (PSCAA). D.I. 1, Ex. A § 9.2(d).

The PSCAA had issued two citations to Buyer in August 2017 for environmental violations related to equipment modifications made while Sellers

still owned all stock in J.A. Jack & Sons.  D.I. 1 ¶¶ 17–18.  Buyer asserted that

Sellers were required to indemnify Buyer under Section 9.2(c) of the SPA for the

"Adverse Consequences" Buyer suffered as a result of the PSCAA violations, D.I.

1 ¶ 22, and were required to reimburse Buyer for the PSCAA violations under

section 9.2(d) of the Agreement, D.I. 1 ¶ 14.

      The SPA expressly allows Buyer to setoff amounts due under the promissory

note.  The SPA states that "Buyer shall be entitled . . . to (i) settle any of Buyer's

claims for indemnification. . . and (ii) recover any other amounts due under this

Agreement or any Ancillary Agreement by setting off such amounts due or payable

under the Promissory Note . . . by Buyer to any Seller."  D.I. 1, Ex. A § 9.5.  The

SPA further provides that "[t]he exercise of any such right of set-off by Buyer,

whether or not ultimately determined to be justified, will not constitute a breach of

the Agreement or any Ancillary Agreement."  D.I. 1, Ex. A § 9.5.

      Plaintiff alleges that Buyer's notice of setoff for amounts Buyer asserts

Sellers owe for the PSCAA violations lacks merit and violates the SPA's terms

because (1) Defendants "failed to provide timely notice of the purported violations

to Sellers resulting in Sellers' inability to contest the [citations] or otherwise satisfy

PSCAA that the purported violations were without merit," D.I. 1 ¶ 20, and (2)

Defendants "unilaterally conceded the violations, blamed the prior owners, and

proceeded with previously-contemplated construction plans without challenging,

defending against or, upon information and belief, meaningfully investigating the purported violations," D.I. 1 ¶ 21.  Plaintiff also alleges that Defendants "have failed to provide requested information and documentation pertaining to the Notice of Setoff causing Sellers to incur costs and attorneys' fees establishing the impropriety of the setoff claims."  D.I. 1 ¶ 26.

Buyer had also previously claimed an additional setoff amount for Real Estate Excise Tax (REET) that Buyer asserted Sellers owed based on a notice received from the State of Washington Department of Revenue.  D.I. 1 ¶ 24.  After Buyer received the REET notice, Buyer began negotiating with the Department of Revenue without prior notice to Sellers.  D.I. 1 ¶ 24.  Upon later learning of the REET notice, Sellers' attorney contacted the Department of Revenue and pointed out that no REET was due.  D.I. 1 ¶ 25.  The Department of Revenue agreed and cancelled the assessment of REET.  D.I. 1 ¶ 25.  Plaintiff asserts that "Sellers incurred significant expense dealing with the REET Notice, which expense could have been avoided had Jack Acquisitions timely notified Sellers of the REET Notice before claiming a setoff."  D.I. 1 ¶ 25.

## II.    LEGAL STANDARDS FOR STATING A CLAIM

To state a claim on which relief can be granted, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but the

complaint must include more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The complaint must set forth enough facts, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Deciding whether a claim is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted).

In addition to the allegations contained in the complaint, courts also consider "exhibits attached to the complaint" when deciding a motion to dismiss. *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

## III.   DISCUSSION

### A.   Count I

In Count I, Plaintiff alleges that all Defendants breached the SPA because they failed to make payments due under the SPA and promissory note. D.I. 1 at 7. Plaintiff alleges that Defendants cannot setoff portions of the payments because the notice of setoff is "without merit . . . and is contrary to the terms of the

Agreement" and that "Defendants' conduct in connection with the Notice of Setoff likewise violated the terms of the Agreement." D.I. 1 ¶ 32.

The SPA, however, expressly allows Buyer to "recover any . . . amounts due . . . by setting off such amounts against any amounts due or payable under the Promissory Note" and states that "the exercise of any such right of setoff by Buyer, *whether or not ultimately determined to be justified*, will not constitute a breach of this Agreement or an Ancillary Agreement." D.I. 1, Ex. A § 9.5 (emphasis added). Thus, Buyer's setoff of an amount due under the promissory note cannot constitute a breach of the SPA even if the reason for the setoff lacked merit.

Plaintiff has also failed to plausibly allege that Defendants' "conduct in connection with" the notice of setoff breached the SPA. Plaintiff asserts that the "course of conduct" that led to Buyer's seeking the setoff included "privately conceding liability on demonstrably meritless charges such as to deny Sellers their contractual right to defend, failing to provide access to records necessary to dispute the charges, and so on." D.I. 16 at 11. But Plaintiff does not allege *how* that "course of conduct" breached the SPA; indeed, Plaintiff does not even identify a provision of the SPA that it alleges the course of conduct breached. Establishing breach of contract requires identifying a duty imposed by the contract that was breached, *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 883 (Del. Ch. 2009), yet Plaintiff has not identified any duty that the SPA imposed on Defendants that

6

Defendants failed to meet.  Accordingly, I will dismiss Count I.

**B.    Count II**

Count II of Plaintiff's Complaint is a claim against Jack Acquisitions for breach of contract for failure to comply with the SPA's indemnity provisions.  D.I. 1 at 8.  Specifically, Count II alleges that Jack Acquisitions breached Section 9.2(c)'s requirement that Sellers "indemnify, defend and hold harmless" Jack Acquisitions from any "Adverse Consequences" because Jack Acquisitions failed to timely notify Sellers of the PSCAA citations and the REET claim.  D.I. 1 ¶¶ 34–35.  But, as Plaintiff concedes, the "SPA contains no explicit notice provision[,]" D.I. 16 at 12, 14, and this defend-and-hold-harmless clause expressly imposes obligations on Sellers, not Buyer.

Plaintiff also argues that "Count II does not hinge exclusively on a failure to give notice, but rather on a course of action that prevented Sellers from defending against baseless charges, thereby mitigating (indeed, eliminating) losses of any type."  D.I. 16 at 14.  The language of Count II, however, alleges only that the lack of timely notice constituted a breach of the SPA's indemnification provision.  *See* D.I. 1 ¶¶ 33–35.  But even if the Complaint had alleged that the "course of action" breached the SPA indemnification provision, that claim would not have been plausible because, the indemnification clause in Section 9.2 of the SPA only imposes obligations on Sellers, not Buyer.

Because Count II does not identify a duty imposed by the SPA that Defendants breached, I will dismiss it.

## C.    Count III

Count III alleges that Jack Acquisitions breached the implied covenant of good faith and fair dealing.  D.I. 1 at 9.

### 1.    Legal Standards

Every contract governed by Delaware law contains an implied covenant of good faith and fair dealing.  *Airborne Health, Inc. v. Squid Soap, LP*, 984 A.2d 126, 145 (Del. Ch. 2009).  The implied covenant "requires a party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the bargain."  *Id.* at 145–46.  The implied covenant applies "when a contract is . . . silent with respect to the contested issue. . . . [and] the parties' expectations on the issue were so fundamental that they clearly would not need to negotiate about nor memorialize them."  *GWO Litig. Tr. v. Sprint Sols., Inc.*, 2018 WL 5309477, at *6 (Del. Super. Ct. Oct. 25, 2018).  "A claimant [thus] may only invoke the protections of the covenant when it is clear from the underlying contract that the contracting parties would have agreed to proscribe the act later complained of."  *Id.* (citation omitted).

2.    **Discussion**

Plaintiff alleges that Jack Acquisitions breached the implied covenant by "failing to timely notify Sellers of any claimed violations and further undermining Sellers' ability to defend against or mitigate the purported violations[] by failing to meaningfully investigate, challenge or defend against the violations, and by conceding the violations." D.I. 1 ¶ 38. Plaintiff asserts that the implied covenant applies because, although the SPA does not expressly prohibit Buyer's conduct, Section 9.2(c)'s defend-and-hold-harmless provision would be "utterly meaningless" if it did not require Buyer to notify Sellers of adverse consequences. D.I. 16 at 17. And thus, Plaintiff asserts, "[i]n view of Section 9.2(c), it is clear from the underlying contract that the contracting parties would have agreed to proscribe . . . Buyer's failure to give notice, [and Buyer's] unilaterally and privately conced[ing] liability as to defensible claims." D.I. 16 at 17 (internal quotation marks and citation omitted).

I find that Plaintiff has stated a plausible claim for breach of the implied covenant of good faith and fair dealing. Plaintiff has plausibly alleged that implicit in the SPA's express provision that Sellers defend and hold Buyer harmless from any adverse consequences were obligations on Buyer's part to provide timely notice of the PSCAA citations and REET claim and to not take actions that would undermine Seller's defenses to the citations and REET claim. Plaintiff has also

9

plausibly alleged that the parties would have agreed to such a notice requirement and to prohibit Buyer from conceding liabilities to defensible claims.  Accordingly, I will deny Defendants' motion to dismiss Count III.

### D.     Count IV

Count IV alleges unjust enrichment against all Defendants.  D.I. 1 at 9.

### 1.     Legal Standards

"Unjust enrichment is the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity or good conscience." *BAE Sys. Info. & Elec. Sys. Integration, Inc. v. Lockheed Martin Corp.*, 2009 WL 264088, at *7 (Del. Ch. Feb. 3, 2009) (internal quotation marks and citation omitted).  "When the complaint alleges an express, enforceable contract that controls the parties' relationship, . . . a claim for unjust enrichment will be dismissed." *Bakerman v. Sidney Frank Importing Co.*, 2006 WL 3927242, at *18 (Del. Ch. Oct. 10, 2006) (citations omitted).

### 2.     Discussion

Plaintiff alleges that "Defendants' conduct constitutes unjust enrichment" because Defendants "improperly with[held] funds due and owing to Sellers" and thus "Defendants have derived significant monetary value at Sellers' expense." D.I. 1 ¶¶ 40–41.  Plaintiff, however, has not stated a plausible claim for unjust enrichment because she has failed to plead a "right to recovery not controlled by

contract." *BAE*, 2009 WL 264088, at *8. "If a contract comprehensively governs the parties' relationship, then it alone must provide the measure of the plaintiff's rights and any claim of unjust enrichment will be denied." *Id.* at *7 (citation omitted). Here, the SPA and the promissory note govern the relationship between the parties with respect to payments that Buyer owes under the promissory note. Buyer owes Sellers money only because the SPA requires Buyer to pay funds under the terms of the promissory note; and the SPA and the promissory note set out the terms on which Buyer must make those payments. I will thus dismiss Count IV's claim for unjust enrichment.[2]

### E.    Count V

Count V is a claim for declaratory relief against all Defendants under the Uniform Declaratory Judgment Act. D.I. 1 at 10.

Plaintiff seeks a declaration that the "Notice of Setoff lacks merit . . . and is contrary to the terms of the Agreement," a declaration of "whether the conduct of Jack Acquisitions . . . complied with the terms of the Agreement," and a declaration of "whether Sellers are entitled to damages proximately caused by Jack Acquisitions' failure to comply with the Agreement." D.I. 1 ¶¶ 43 (a), (b), (e).

---

[2] Plaintiff correctly points out that claims of unjust enrichment may survive a motion to dismiss "when there is doubt about the validity or enforceability of the contract." D.I. 16 at 20. That argument is inapposite, however, because Plaintiff does not assert in the Complaint that the SPA is invalid or unenforceable.

Plaintiff, however, has failed to allege what "terms of the Agreement" she wants
me to declare that the setoff notice or Jack Acquisitions' conduct failed to comply
with or how the notice or conduct failed to comply with those terms.  The only
allegations for breach of contract in the Complaint are those in Counts I and II and,
as explained above, those allegations fail to state a plausible claim for breach of the
SPA.  Also, Plaintiff does not state a legal basis for the "lacks merit" declaration.
Plaintiff does not explain how to determine whether the setoff notice "lacks merit"
or why a setoff notice that "lacks merit" violates the law.

Plaintiff also seeks a declaration that the notice of setoff and Buyer's
conduct with respect to the notice of setoff failed to comply with the implied
covenant of good faith and fair dealing.  D.I. 1 ¶¶ 43(a), (b).  Because, as explained
above, Plaintiff's Complaint plausibly alleges that Buyer's conduct breached the
implied covenant, the Complaint has stated a plausible claim for a declaration that
Buyer breached the implied covenant.

Finally, Plaintiff seeks declarations of "whether Defendants are entitled to a
setoff to the payment due under the Agreement" and "whether Sellers are entitled
to disputed payments due under the Agreement."  D.I. 1 ¶¶ 43 (c), (d).  But again,
Plaintiff does not point to a legal basis for the claim; Plaintiff does not explain why
Defendants are not entitled to setoff the payments under the law or why Plaintiff
would be entitled to payment under the law.  Plaintiff argues in briefing that "*if* the

12

Setoff Notice lacks merit, then Defendants must discharge their payment obligations under the SPA and the Promissory Note," D.I. 16 at 9, but, as explained above, Plaintiff does not explain the legal basis for the "lacks merit" claim.

## IV.   CONCLUSION

For the foregoing reasons, I will grant in part and deny in part Defendants' motion to dismiss Plaintiff's Complaint.  I will grant Defendants' motion to dismiss Counts I, II, and IV.  I will deny Defendants' motion to dismiss Count III. I will deny Defendants' motion to dismiss Count V insofar as it seeks a declaration of breach of the implied covenant of good faith and fair dealing, but I will otherwise dismiss Count V.

The Court will enter an order consistent with this Memorandum Opinion.